UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANARD KITCHENS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>TORDSEN, et al.,<br><br>　　　　Defendants. | CASE NO. 1:12-cv-0105-AWI-MJS (PC)<br><br>**ORDER (1) DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT (ECF No. 63); AND (2) GRANTING DEFENDANTS' MOTION TO AMEND DISCOVERY AND SCHEDULING ORDER (ECF No. 69)**<br><br>Discovery Deadline: **January 1, 2015**<br>Dispositive Motion Deadline: **February 16, 2015** |

### I.　PROCEDURAL HISTORY

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. (ECF Nos. 1 & 10.)

This matter proceeds on Plaintiff's first amended complaint regarding acts that occurred during Plaintiff's pretrial detention at Kings County Jail ("KCJ"). (ECF No. 26.) The Court screened Plaintiff's first amended complaint and found that it stated cognizable claims against Defendant Dwayne Tordsen for retaliation in violation of the First Amendment, and against Defendants Dwayne Tordsen, Coker, Leach and Day for subjecting Plaintiff to conditions of confinement that amounted to punishment in violation of the Fourteenth Amendment. (ECF No. 28.) The Court concluded that Plaintiff had failed to state (1) a First Amendment retaliation claim against Defendants Coker, Leach,

and Day; (2) a claim under California Code of Regulations §§ 3370(c) and 3450, or California Department Operations Manual § 54046.8 against Defendants Marryanne Tordsen and Costa; or (3) a claim under California Code of Regulations §§ 3361(a) and 3354.2(c)(1), or California Civil Code § 56.10 against Marryanne Tordsen. (Id. at 7-9.) The Court ordered Plaintiff to file an amended complaint or notify the Court of his willingness to proceed only on his cognizable claims. (ECF No. 28 at 11.) Plaintiff notified the Court of his willingness to proceed only on the cognizable claims (ECF No. 29), and, on May 31, 2013, the Court dismissed the non-cognizable claims and dismissed Defendants Marryanne Tordsen and Costa. (ECF Nos. 30 & 32.)

On May 1, 2014, Plaintiff filed a motion for leave to file an "amended/ supplemental" complaint, and also lodged a proposed second amended complaint. (ECF Nos. 63 & 64.) Defendants opposed the motion (ECF No. 67), and Plaintiff filed a reply. (ECF No. 71).

On May 22, 2014, Defendants filed a motion to amend the Court's discovery and scheduling order in light of Plaintiff's motion to amend the complaint. (ECF No. 69.) Plaintiff did not oppose the motion.

These motions are deemed submitted pursuant to Local Rule 230(*l*).

## II. MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

### A. Legal Standard

The decision to grant or deny leave to amend pleadings is within the trial court's discretion. Swanson v. U.S. Forest Serv., 87 F.3d 339, 343 (9th Cir. 1996); United States v. Cnty. of San Diego, 53 F.3d 965, 969 n.6 (9th Cir. 1995).

A party seeking leave to amend pleadings must demonstrate that amendment is proper under Federal Rule of Civil Procedure 15. Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1992). Under Rule 15(a)(2), the court should freely give leave to amend a pleading "when justice so requires." The Court should apply this policy "with extreme liberality." Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001) (quoting Morongo Band of Mission Indians v. Rose, 893 F. 2d 1074,

1079 (9th Cir. 1990)). "If the underlying facts or circumstances relied upon by a [party] may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Forman v. Davis, 371 U.S. 178, 182 (1962).

However, a district court may deny leave to amend where there is "'any apparent or declared reason' for doing so, including undue delay, undue prejudice to the opposing party or futility of the amendment." Lockman Found. v. Evangelical Alliance Mission, 930 F.2d 764, 772 (9th Cir. 1991) (quoting Forman, 371 U.S. at 182). These factors are not to be given equal weight. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003). Prejudice to the opposing party must be given the greatest weight. Id. "Absent prejudice, or a strong showing of any of the remaining Forman factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." Id.

**B.    Parties' Arguments**

Plaintiff seeks leave to file an "amended/supplemental complaint adding new claims, new defendants and new information." (ECF No. 63 at 1.) Plaintiff explains that his lack of "legal knowledge" led him to misstate or omit some claims in his first amended complaint. Plaintiff believes he now is able to properly state additional claims. He also seeks leave to add new defendants. Plaintiff asserts that the statute of limitations as to these defendants would be tolled pursuant to California Code of Civil Procedure § 352(a)(3).

Defendants oppose Plaintiff's motion on the following grounds: (1) the motion may have been filed for purposes of delaying the litigation, (2) Plaintiff has known the alleged facts in his proposed second amended complaint since the filing of his original complaint, (3) the disputes regarding discovery and evidentiary issues that Plaintiff proposes to add do not constitute newly discovered evidence that would support amendment of the complaint; (3) existing and proposed defendants would be prejudiced by the extension of discovery and passage of time since the underlying events, (4) claims relating to Plaintiff's conditions of confinement are time barred, and (5) Plaintiff did not amend when given that option in the Court's screening order.

### C.     Plaintiff's Proposed Amended Complaint

Plaintiff's proposed second amended complaint would add the following defendants: (1) Kim Pedreiro, Commander at KCJ, (2) Frank, a registered nurse at KCJ; (3) Lavan H., head nurse at KCJ, and (4) Minetta Costa, medical program manager at KCJ. (ECF No. 64.)

Plaintiff's proposed complaint contains essentially the same allegations as the operative complaint regarding the alleged housing of Plaintiff in a dirty cell. It also contains new allegations concerning the proposed new defendants. His allegations may be summarized essentially as follows.

Plaintiff was housed in the Secure Housing Unit ("SHU") of the KCJ on December 29, 2010. Defendant Tordsen searched Plaintiff's cell, found damage to the cell, and had Plaintiff strip searched. Plaintiff was handcuffed and transferred to another holding cell where he was kept for six hours. Plaintiff complained to Defendant Tordsen about his handcuffs and the holding cell. Plaintiff asked for a grievance form, but Defendant Tordsen ignored the request. Defendant Tordsen escorted Plaintiff back to the SHU and placed Plaintiff in a cell covered with feces. Defendant Tordsen provided Plaintiff with minimal cleaning materials. Cells are typically cleaned by inmate workers who have been convicted and sentenced and who are provided adequate cleaning supplies. Plaintiff had not been convicted or sentenced at the time he was placed in the dirty cell.

Plaintiff asked Defendant Tordsen to place him in a different, vacant cell. Plaintiff again asked Defendant Tordsen for a grievance form but was refused. Plaintiff asked to be provided adequate cleaning supplies but was refused.

While Defendant Tordsen was exiting the SHU at the end of his shift, Plaintiff pressed the emergency intercom button and threatened to kill himself if he was not removed from the cell. Plaintiff was not suicidal, but threatened suicide to get a response from staff. Defendants Coker, Leach, and Day responded to Plaintiff's threat. Plaintiff informed them he did not want to kill himself but just wanted a clean cell. Defendant Day gave Plaintiff the option of either cleaning the cell or being placed on suicide watch.

Plaintiff asked for a grievance form but was told by Defendant Leach that there was no grievable offense. Plaintiff asked Defendant Coker if he was going to let the other defendants violate his right to file a grievance. Defendant Coker shrugged but did not respond.

Defendant Day again asked if Plaintiff wanted to be placed on suicide watch or clean the cell. Plaintiff chose to be placed on suicide watch. Defendants Day, Leach, and Coker placed Plaintiff on suicide watch for the night. Plaintiff's commissary purchase was withheld from him. California regulations require that a suicide watch order be given by a physician or psychologist. However, Defendants did not contact medical staff regarding Plaintiff's threat. California regulations also mandate that an inmate who threatens suicide be placed on suicide precaution, not suicide watch.

Plaintiff was removed from suicide watch the next day and returned to Defendant Tordsen's custody and to the filthy cell. Plaintiff again asked to be housed in another, vacant cell but was refused. Plaintiff began to clean his cell with limited supplies. While cleaning, he slipped in a puddle of cleaning fluid, fell, and was knocked unconscious. No puddle would have formed had Plaintiff been provided adequate cleaning supplies.

When Plaintiff awoke, Defendant Tordsen and several nurses were standing outside the cell door. A nurse determined that Plaintiff was not injured. After the responding officers left, Plaintiff started to experience numbness and drooping on the right side of his face and, because he was concerned about brain damage, he decided to slit his wrists. Plaintiff was diagnosed with facial paralysis, for which there is no cure.

Defendants did not write an incident report regarding Plaintiff's placement on suicide watch or his fall inside the cell.

Defendant Tordsen wrote an incident report regarding damage to Plaintiff's prior cell, and falsely stated that Plaintiff was "rehoused to cell B86 without further incident." This statement is contradicted by Daily Population Reports showing that cell B86 remained vacant on December 29, 2010, and by safety logs showing Plaintiff was on suicide watch on December 29, 2010.

After Plaintiff was diagnosed, he attempted to file a lawsuit but staff members prevented him from doing so. Staff members intercepted his outgoing legal mail and withheld his incoming legal mail.

Defendant Costa conspired with Defendant Pedreiro to deny Plaintiff photocopies from his medical files in violation of the Department Operations Manual. Plaintiff intended to use the copies as evidence in the instant action.

Defendant Lavan conspired with Defendant Frank to fraudulently remove funds from Plaintiff's inmate trust account in violation of the regulations. This was done to intimidate Plaintiff so that he would cease requesting his medical records, and thereby would be prevented from filing this action.

Defendant Frank intercepted medical request slips addressed to Defendant Lavan, and responded to the requests by forging Defendant Lavan's signature.

Defendant Frank retaliated against Plaintiff by giving Plaintiff internet printouts containing false information regarding Plaintiff's pain medication and the cause and symptoms of facial paralysis.

During discovery in the instant action, Defendants Coker, Leach, Tordsen, and Day provided falsified responses to Plaintiff's requests for production of documents and perjurious responses to Plaintiff's interrogatories. Specifically, Plaintiff requested the Inmate Housing List for the SHU for December 29 and 30, 2010, in order to show that cell B93 was vacant and Plaintiff could have been moved. However, the documents Defendants produced falsely showed that another inmate was housed in cell B93 on those dates. Plaintiff also submitted interrogatories to Defendants asking whether there were any vacant cells on those dates, and Defendants responded by stating that they had "no knowledge" of the issue. Finally, Defendant Tordsen responded falsely to interrogatories by stating (1) he didn't respond to Plaintiff's suicide threat, (2) he had no "first hand knowledge" of Plaintiff's suicide threat, and (3) Plaintiff did not say why he wanted a grievance form on December 29, 2010.

**D.     Analysis**

As set forth below, leave to amend Plaintiff's complaint would be futile because Plaintiff has failed to state any additional cognizable claims that can properly be brought in this action.

### 1.     Unrelated Claims Against Unrelated Defendants

Fed. R. Civ. P. 18(a) states: "A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.  Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees – for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(g)); see also Fed. R. Civ. P. 20(a)(2) ("Persons . . . may be joined in one action as defendants if . . . any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences . . . .")

The following conduct does not arise out of the same transaction or occurrence as Plaintiff's placement in a feces covered cell, which is the conduct on which this case proceeds: Defendant Costa's and Pedreiro's denial of copies of Plaintiff's medical records, Defendant Lavan's and Frank's removal of funds from Plaintiff's inmate trust account, Defendant Frank's interception of and response to Plaintiff's medical request slips, and Defendant Frank's provision of internet printouts regarding Plaintiff's medical concerns. Plaintiff may not bring these unrelated claims in this action. Fed. R. Civ. P. 20(a)(2). Plaintiff has not raised any other claims against these defendants.

Leave to amend to add claims against Defendants Costa, Pedreiro, Lavan, and Frank would be futile and will be denied.

7

## 2. Claims Against Existing Defendants

Plaintiff seeks to add additional claims against existing Defendants Tordsen, Leach, Coker, and Day. First, Plaintiff seeks to assert new legal claims for retaliation, discrimination, due process, access to courts, and regulation violations based on his being housed in a dirty cell. Additionally, Plaintiff seeks to assert claims based on new facts: Defendants' alleged failure to file or filing of false incident reports, and their alleged discovery misconduct during the course of this litigation.[1]

### a. First Amendment Retaliation

Plaintiff raises numerous new allegations of retaliation.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

The second element of a prisoner retaliation claim focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Sorrano's Gasco. Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1288-89 (9th Cir. 2003) (finding that a prisoner establishes a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent").

---

[1] Plaintiff also asks that criminal charges be brought against these Defendants. Such relief is beyond the Court's authority.

Case 1:12-cv-00105-SJM-MJS   Document 74   Filed 10/28/14   Page 9 of 16

The third prong can be satisfied by various activities. Filing a grievance is a protected action under the First Amendment. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989). Pursuing a civil rights legal action is similarly protected under the First Amendment. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity . . . ." Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1300 (9th Cir. 1999). The correct inquiry is to determine whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300).

With respect to the fifth prong, a prisoner must affirmatively show that "the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo, 778 F.2d at 532.

Plaintiff alleges that Defendant Tordsen retaliated against him after Plaintiff asked for a grievance form. The Court considered this allegation in its prior screening order (ECF No. 28), and concluded that the operative complaint states a First Amendment retaliation claim on this ground. Plaintiff does not allege additional facts regarding this claim. Accordingly, no purpose would be served in granting Plaintiff leave to amend this claim.

Plaintiff alleges that Defendant Tordsen retaliated against him for refusing to clean the dirty cell by reporting that Plaintiff was rehoused without incident. This allegation does not involve protected conduct, nor adverse action that would chill the exercise of his First Amendment rights. This allegation fails to state a retaliation claim.

Plaintiff alleges that Defendants Coker, Leach, Tordsen, and Day retaliated against him for filing this lawsuit by providing false responses to Plaintiff's interrogatories and requests for production of documents. Filing a lawsuit is protected conduct under

the First Amendment. Rizzo, 778 F.2d at 532. However, Plaintiff has not alleged facts to show that his protected conduct was a "substantial or motivating factor" behind Defendants' allegedly falsified discovery responses.[2] Brodheim, 584 F.3d at 1271 (citation and internal quotation marks omitted). This allegation does not state a retaliation claim.

Plaintiff alleges that Defendants Coker, Leach, Tordsen, and Day retaliated against him for refusing to clean his cell by placing him on suicide watch, withholding his commissary purchase, and failing to file incident reports. Plaintiff's refusal to clean his cell does not constitute protected conduct. Plaintiff fails to state a retaliation claim on this basis. Additionally, Plaintiff's factual allegations indicate Defendant Tordsen was not involved in the decision to place Plaintiff on suicide watch. Further, Plaintiff's allegations do not indicate he was harmed by the failure to file an incident report or that the lack of an incident report constituted adverse action. These allegations do not state a claim.

Plaintiff alleges that Defendants Coker, Leach, Tordsen, and Day retaliated against him for asking for a grievance form by failing to file an incident report. Requesting a grievance form constitutes protected conduct. See Valandingham, 866 F.2d at 1138. Again, however, there is nothing in the facts to indicate the lack of an incident report constituted adverse action. This allegation fails to state a claim.

Plaintiff has failed to state any cognizable retaliation claims, apart from those alleged in the operative complaint. Leave to amend to add these claims would be futile and will be denied.

### b.   Equal Protection

Plaintiff alleges that Defendants Tordsen, Coker, Leach, and Day discriminated against him by denying his request to relocate to another cell even though other inmates were permitted to relocate.

---

[2] Additionally, as discussed in the Court's order regarding Plaintiff's discovery requests (ECF No. 73), much of the discovery dispute appears to arise from Plaintiff's misinterpretation of the documents produced by Defendants.

The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). An equal protection claim may be established in two ways. The first method requires a plaintiff to show that the defendant has intentionally discriminated against the plaintiff on the basis of the plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001). Under this theory of equal protection, the plaintiff must show that the defendant's actions were a result of the plaintiff's membership in a suspect class, such as race, religion, or alienage. Ball v. Massanari, 254 F.3d 817, 823 (9th Cir. 2001).

If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); San Antonio Sch. Dist. v. Rodriguez, 411 U.S. 1, 40 (1973); SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002). To state an equal protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. Village of Willowbrook, 528 U.S. at 564.

Plaintiff has not alleged a suspect classification. Nor has he alleged facts to indicate there was no rational basis for denying his request to move to a different cell. Accordingly, Plaintiff's proposed amended complaint does not state a cognizable Equal Protection claim.

### c. Conditions of Confinement

Plaintiff alleges Defendants violated his Fourteenth Amendment due process rights by housing him in a filthy cell, directing him to clean it without proper cleaning supplies, and requiring him to choose between cleaning the cell or being placed on suicide watch. The Court considered these allegations in its prior screening order (ECF No. 28), and concluded that the operative complaint states a Fourteenth Amendment

due process claim on these bases. Accordingly, leave to amend to allege these claims is unnecessary.

### d. Access to Courts

Plaintiff alleges that Defendants interfered with his ability to file this lawsuit by failing to write incident reports or writing false incident reports regarding his transfer to the dirty cell, his placement on suicide watch, and his fall in the cell while cleaning.[3]

Inmates have a fundamental right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996). The right is limited to direct criminal appeals, habeas petitions, and civil rights actions. Id. at 354. Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 412-15 (2002). A plaintiff must show that he suffered an "actual injury" by being shut out of court. Lewis, 518 U.S. at 350-51. An "actual injury" is one that hinders the plaintiff's ability to pursue a legal claim. Id. at 351.

Plaintiff has not shown that Defendants have any affirmative constitutional obligation to file incident reports. Nor has he alleged how Defendants' failure to file incident reports hindered his ability to pursue his legal claims. The instant action evidences that Plaintiff was able to file this suit and is being afforded a meaningful opportunity to pursue his claims. See Ornelas v. Giurbino, 358 F. Supp. 2d 955, 972-72 (S.D. Cal. 2005). Defendants were not required to enable him to "litigate effectively once in court" by documenting all of his action. Lewis, 518 U.S. at 354. Defendant has not alleged an actual injury.

---

[3] Plaintiff also alleges that unspecified jail staff intercepted his legal mail and unlawfully removed documents from his incoming legal mail in an attempt to interfere with his access to the Courts. However, Plaintiff has not linked this claim to any named defendant, nor has he named Doe defendants in this action. In any event, this allegation fails to state a cognizable claim for same reason as his other access to courts claims, discussed below.

Allegations that defendants covered up or destroyed evidence may state a cognizable claim if the conduct deprives Plaintiff of meaningful access to the courts. See Delew v. Wagner, 143 F.3d 1219, 1222 (9th Cir. 1998). However, Plaintiff has not alleged how or why Defendant Tordsen's allegedly false statement that Plaintiff was "rehoused to cell B86 without incident" has obstructed his ability to pursue his claims. Plaintiff agrees that he was rehoused to cell B86, even though that information may be contradicted by other documents in Plaintiff's possession. Additionally, the statement that he was rehoused "without incident" does not preclude Plaintiff from pursuing his legal arguments.

Plaintiff has failed to allege a cognizable access to courts claim. Leave to amend to add such a claim would be futile and will be denied.

### e. California Regulations

Plaintiff alleges that Defendants violated various provisions of Title 15 of the California Code of Regulations governing conduct of prison officials. As Plaintiff previously was advised (ECF No. 28), the existence of the Title 15 regulations does not necessarily entitle an inmate to sue civilly for their violation. The Court has found no authority to support a finding of an implied private right of action under Title 15, and Plaintiff has provided none. Several district court decisions hold that there is no such right. See e.g., Vasquez v. Tate, No. 1:10-cv-1876-JLT (PC), 2012 WL 6738167, at *9 (E.D. Cal. Dec. 28, 2012); Davis v. Powell, 901 F. Supp. 2d 1196, 1211 (S.D. Cal. 2012).

Plaintiff may not bring an independent claim solely for violation of prison regulations set out in Title 15. Leave to amend such a claim is futile and will be denied.

### f. Refusal to Provide Grievance Forms

Plaintiff alleges that Defendants violated his right to petition the government for redress of grievances when they refused to provide him with grievance forms. This claim fails as a matter of law. A prisoner has no substantive right to a prison grievance system and, therefore, due process claims based on the denial of or interference with a

prisoner's access to a prison grievance system are not cognizable. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).

### g.  Procedural Due Process

Plaintiff alleges that Defendants violated his procedural due process rights by failing to inspect cell B86 for safety hazards before rehousing Plaintiff. "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). When one of these interests is at stake, due process requires that the party be afforded an opportunity to be heard at a meaningful time and in a meaningful manner. Mathews v. Eldrige, 424 U.S. 319, 331 (1976).

Plaintiff does not argue that he was not provided a meaningful opportunity to be heard regarding his placement in cell B86. Rather, he argues that the cell should have been inspected and, presumably, had it been, he should not have been placed there. These allegations are subsumed in his conditions of confinement claim, discussed above. They do not state a procedural due process claim.

### h.  Injunctive Relief

Plaintiff's proposed complaint makes a passing reference to injunctive relief, but does not specify what injunctive relief he requests. In any event, Plaintiff no longer is detained at KCJ, and instead is housed at Pleasant Valley State Prison. There is no indication that Plaintiff will be transferred back to KCJ. Accordingly, any request for injunctive relief relating to Plaintiff's detention at KCJ would appear to be moot. See Preiser v. Newkirk, 422 U.S. 395, 402–03 (1975); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991); see also Andrews v. Cervantes, 493 F.3d 1047, 1053 n. 5 (9th Cir. 2007). Leave to amend to add claims for injunctive relief would be futile and will be denied.

### i. Supervisory Liability

Plaintiff appears to allege that Defendant Coker and Leach are liable in their supervisory capacities because they witnessed the misconduct of others and failed to act.

There is no respondeat superior liability under § 1983, as each defendant is only liable for his or her own misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 676-77 (2009); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009). Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

The Court has addressed above (and in its prior screening order) Plaintiff's allegations regarding Coker's and Leach's direct involvement in the alleged deprivation of his rights. These defendants are not subject to additional liability on a theory of respondeat superior. Leave to amend this claim will be denied.

### j. Damages

Plaintiff's proposed complaint increases the amount of compensatory and punitive damages he seeks. Because he has failed to allege any additional cognizable claims or substantively alter the facts on which those claims are based, the Court will not grant Plaintiff leave to amend at this stage of the proceedings in order to increase the amount of damages sought.

### E. Conclusion

Plaintiff's proposed amended complaint fails to state any new cognizable claims that may be brought in this action. Leave to amend would be futile and will be denied.

### III. MOTION TO AMEND THE DISCOVERY AND SCHEDULING ORDER

Defendants argue that good cause exists to modify the current discovery and scheduling order (ECF No. 40), which set the discovery cut-off at July 4, 2014, and the

deadline for filing dispositive motions at September 15, 2014. Defendants seek the amendment on the ground that additional discovery would be likely if Plaintiff is allowed to proceed against new defendants and on new claims. (ECF No. 69.) Defendants also state that they canceled Plaintiff's deposition pending resolution of Plaintiff's motion for leave to amend, to avoid the potential expense of deposing Plaintiff again.

Defendants have presented good cause for modifying the Court's discovery and scheduling order. The deadline for completion of all discovery, including filing motions to compel, shall be January 5, 2015. The deadline for filing pre-trial dispositive motions shall be February 16, 2015.

## IV.   ORDER

For the reasons stated, it is HEREBY ORDERED that:

1. Plaintiff's motion for leave to file an amended complaint (ECF No. 63) is DENIED;
2. Defendants' motion to amend the discovery and scheduling order (ECF No. 69) is GRANTED;
3. The discovery and scheduling order (ECF No. 40) is amended as follows:
   a. The deadline for the completion of all discovery, including filing motions to compel, shall be January 5, 2015; and
   b. The deadline for filing pre-trial dispositive motions shall be February 16, 2015.

IT IS SO ORDERED.

Dated:   October 28, 2014          /s/ *Michael J. Seng*
                                   UNITED STATES MAGISTRATE JUDGE

16