UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANARD KITCHENS,<br><br>        Plaintiff,<br><br>    v.<br><br>TORDSEN, et al.,<br><br>        Defendants. | CASE NO. 1:12-cv-0105-AWI-MJS (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 77)** |

## I. PROCEDURAL HISTORY

Plaintiff is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action brought pursuant to 42 U.S.C. § 1983. (ECF Nos. 1, 10.) This matter proceeds against Defendant Tordsen on Plaintiff's First Amendment retaliation claim, and against Defendants Tordsen, Coker, Leach and Day on Plaintiff's Fourteenth Amendment claim for subjecting Plaintiff to conditions of confinement that amounted to punishment. (ECF No. 28.) All defendants were served and have appeared in the action (ECF Nos. 44, 47 & 54.)

On February 13, 2015, Defendant moved for summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies. (ECF No. 77.) Plaintiff filed an opposition (ECF No. 79), and Defendants filed a reply (ECF No. 81). Plaintiff filed a response to Defendants reply on March 23, 2015. (ECF No. 82.)

Plaintiff's "Response to Defendants' Reply" (ECF No. 82) was not authorized. Local Rule 230 (l) permits only the filing of a response by the party opposing a motion and a reply by the moving party. However, inasmuch as Defendants have not objected to Plaintiff's reply motion and Plaintiff is a *pro se* litigant, the Court will consider Plaintiff's surreply.

## II.  LEGAL STANDARD – MOTION FOR SUMMARY JUDGMENT

Any party may move for summary judgment, and "[t]he [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed R. Civ. P. 56(c)(1).

"Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). If the burden of proof at trial rests with the nonmoving party, then the moving party need only point to "an absence of evidence to support the nonmoving party's case." *Id*. Once the moving party has met its burden, the nonmoving party must point to "specific facts showing that there is a genuine issue for trial." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

In evaluating the evidence, "the [C]ourt does not make credibility determinations or weigh conflicting evidence," and "it draws all inferences in the light most favorable to the nonmoving party." Id.

2

## III. FACTUAL SUMMARY

The court finds the following facts to be undisputed:

Following the discovery of contraband in Plaintiff's cell, Plaintiff was removed from the cell and handcuffed for six hours while that alleged infraction was being investigated. Plaintiff, uncomfortable from being handcuffed for so long, requested a grievance form from Defendant Tordsen. Tordsen denied his request and moved Plaintiff to a cell that had recently been occupied by an incontinent inmate and had yet to be cleaned.[1] Plaintiff thought he was being placed in the dirty cell in retaliation for his earlier request for a grievance form, and again requested a grievance form from Tordsen. Tordsen again failed to provide one.

Plaintiff threatened suicide in order to be removed from the dirty cell; and Defendants Day, Coker, and Leach came to Plaintiff's cell in response. Plaintiff complained about the dirty cell and requested a grievance form. Defendants did not provide one. Plaintiff was put on suicide watch overnight, but in the morning was returned to the still dirty cell. Plaintiff did not make further requests for grievances. He ended up cleaning the cell himself with Windex and paper towels.

## III. PARTIES' ARGUMENTS

Defendants argue that Plaintiff failed to exhaust his administrative remedies because he did not file a grievance on the issue of being placed in a dirty cell. They cite the "Kings County Jail Policy and Procedure Manual" to argue that the first step of the grievance process is to make a verbal complaint to a deputy on shift. Once the deputy hears the complaint, he or she has 24 hours to resolve the complaint. If the complaint is not or cannot be resolved in that time, the inmate must then proceed to the second step of the grievance process, which is to submit a grievance form to the shift supervisor. (ECF Nos. 77-1, at 6-7; 77-5, at 2.)

---

[1] Plaintiff characterizes the cell as "feces-covered." Defendants assert it was merely "speckled with feces." Either way, there does not seem to be any dispute that the cell was soiled with human fecal matter.

Here, Defendants argue that once Plaintiff complained about the dirty cell, they had 24 hours to remedy the condition. Fewer than 24 hours elapsed between the time Tordsen placed Plaintiff in the feces-covered cell and the time that Plaintiff cleaned the cell himself. Defendants argue this means Plaintiff's "complaints were resolved within 24 hours." (ECF No. 81, at 6, 7.) In any event, Defendants argue they were not obligated to provide Plaintiff with a written grievance form in response to his request (ECF No. 81, at 7), and that if, after 24 hours had elapsed, Plaintiff "did not feel that [his complaints] were adequately addressed, a discussion should have been had with the deputy and a formal grievance submitted." (Id., at 6.)

Plaintiff, for his part, argues that Defendants have misstated the first step of the grievance procedure, and that a first-level grievance must be made in writing, not orally. In support of his argument, he cites two documents: (1) the "Kings County Jail Inmate Orientation Jail Rules," which outlines the grievance procedure somewhat differently than the "Manual," and (2) the "Kings County Jail Inmate Grievance Form" itself.

The "Jail Rules" provide, in relevant part, that:

> "The first step of the grievance procedure is to file a grievance with Floor Deputy. The deputy has 24 hours to solve the problem. If the deputy cannot solve the grievance, the grievance can be submitted to the next level."

Plaintiff argues that the words "file" and "submitted" indicate that the first-level grievance must be made in writing. He writes, "the word 'file'… denotes the submission of documents. For instance, a person can file for a divorce, or file a petition, or file a tax return. One cannot verbally 'file' a complaint." (ECF No. 79, at 4.) According to Plaintiff's view of the grievance process, the 24-hour period cannot even begin until an inmate is provided with a grievance form.

The "Inmate Grievance Form" does not use the word "file." Instead, it states that the first step of the grievance procedure is to "advise a Deputy of the problem, and allow

4

the Deputy up to 24 hours to resolve." (ECF No. 80, at 16.) However, the form has three sections, respectively entitled "First," "Second," and "Third Step Grievance," with blank spaces following each to be filled in by either the inmate or the person to whom the grievance is submitted.  Plaintiff contends that "the blank spaces designated for the 'documentation' of names, dates and times on the actual grievance form" indicate that "Step One of the grievance process is a procedure of written documentation, and not merely a verbal complaint." (ECF No. 80, at 6.)

Therefore, Plaintiff argues, he could not proceed any further in the administrative appeal process than making repeated requests for a grievance form.  He argues that "by simply asking the defendants for a grievance form, [he] has indeed exhausted all administrative remedies that were 'available' to him at the time." (Id.)  Plaintiff also argues that by denying his three grievance requests, placing him twice in a feces-covered cell, and making him clean his cell himself, Defendants chilled his First Amendment rights and that his "will to assert his Constitutional rights diminished as a result of the defendants' reprisals." (ECF No. 79, at 8.)

In reply, Defendants reiterate their interpretation of the proper grievance procedure and point out procedural flaws in Plaintiff's declaration.

**IV.   DISCUSSION**

    **A.   Legal Standard -- Exhaustion**

The Prison Litigation Reform Act ("PLRA") stipulates, "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a). Therefore, prisoners are required to exhaust all available administrative remedies prior to filing suit.  Jones v. Bock, 549 U.S. 199, 211 (2007).

"The primary purpose of a [prisoner's administrative] grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation."

Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). "A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim." Id. Instead, the grievance must alert "'the prison to the nature of the wrong for which redress is sought,'" id. at 1120 (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)), and must give the prison an opportunity "to reach the merits of the issue." Id. at 1119.

A motion for summary judgment is the proper means to raise a prisoner's failure to exhaust administrative remedies. Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014). Defendants have the burden of proving Plaintiff failed to exhaust available administrative remedies. Id. A defendant's burden of establishing an inmate's failure to exhaust administrative remedies has been characterized by the Ninth Circuit as "very low." Albino v. Baca, 697 F.3d 1023, 1031 (9th Cir. 2012). The "defendant need only show the existence of . . . [a grievance procedure] that the plaintiff did not use." Id. (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778, n.5 (9th Cir. 1996)).

An inmate may be excused from the exhaustion requirement where administrative remedies were "effectively unavailable." Albino, 747 F.3d at 1173 (citing Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010)). An administrative remedy may be "effectively unavailable" where prison officials fail to respond to a properly filed grievance, Sapp v. Kimbrell, 623 F.3d 813, 822-823 (9th Cir. 2010); erroneously inform inmates that additional paperwork is necessary, causing the inmate to miss filing deadlines, Nunez, 591 F.3d at 1226; or fail to provide an inmate with either grievance forms or information about the grievance procedure, despite his complaints or requests. Albino, 747 F.3d at 1177; see also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) (inmate would not fail to timely file where he did not have access to the necessary forms within the filing time period).

6

**B. Analysis**

Viewing the evidence in the light most favorable to Defendants, the Court finds that Defendants have failed to show the absence of a genuine dispute as to whether Plaintiff failed to exhaust. Indeed, the Court finds that there is no genuine dispute of material fact that Defendants rendered the administrative remedy "effectively unavailable," excusing Plaintiff from the exhaustion requirement.

Defendants do not dispute that: they did not accede to any of Plaintiff's multiple requests for a grievance form; they placed Plaintiff twice in a cell soiled with human excrement from another prisoner, the second time after he had complained about conditions in the cell; no effort was made to clean the cell between Plaintiff's two stays in it; or that Plaintiff ultimately had to clean the cell himself.

The Court finds, first, that the procedure Plaintiff was to follow to exhaust the first-level administrative remedy was not clear. Indeed, the information provided tends to confirm ambiguity in the requirements. From the conflicting information provided, a finder of fact might determine that a written grievance was required at the first level, that Plaintiff justifiably believed he had complied with the first step, or that Plaintiff justifiably believed that further attempts to exhaust would be futile because of Defendants' obstructive tactics.

The "Policy and Procedure Manual" to which Defendants cite does indicate that first-level grievances may be made verbally; however, it also indicates that grievances may be made in writing, providing: "depending on the nature of the problem, the deputy may immediately advise the inmate the problem cannot be resolved at his/her level, and therefore shall provide the inmate with a grievance form." (ECF No. 77-1.) Defendants provided no such form. Does this mean they were confused as to whether one was required? Did their inaction tell Plaintiff that they were not going to let him file a written grievance or that he did not need to file one? Under most any interpretation, one could find Plaintiff was prevented from complying or excused from complying.

7

In any event, the information in the Manual was not, apparently, provided to the inmates; Defendants indicate that inmates are only provided with the Jail Rules. (ECF No. 77-5, at 4.) The information in the manual suggesting a verbal complaint may suffice at the first level may not be imputed to Plaintiff because there is no indication that he had access to it. See Albino, 747 F.3d at 1175.

Moreover, as Plaintiff points out, the Jail Rules are worded differently from the Manual, and as such are confusing, if not wholly inconsistent with one another, to the extent that the Rules require an inmate to "file" a first-level grievance and the Manual requires the inmate to "advise" a deputy of his problem.

The grievance form, meanwhile, could reasonably support either the Defendants' argument that the first-level grievance should be verbal or Plaintiff's argument that it should be written. Although the "First Step Grievance" section of the form has blanks to be filled in with writing, the form also indicates that step one is to "advise a Deputy of the problem and allow the Deputy up to 24 hours to resolve." The form does not indicate whether the inmate or the Deputy is to fill out the first section or when in the grievance process the inmate is to be given the form. (ECF No. 79, at 14.)

Apart from the semantic confusion in the above documents, the Court finds that Defendants' repeated denials of Plaintiff's requests for a grievance form, combined with their placement of Plaintiff in the same feces-stained cell about which he had originally complained, rendered the administrative remedy "effectively unavailable," regardless of whether the first step was to be verbal or in writing. Defendants fall well short of meeting their burden to show that a person in Plaintiff's situation would think that additional attempts to redress his wrong – whether in writing or verbally – would be likely to meet with success. See Albino, 747 F.3d at 1177 (defendants did not establish that jail had "an available administrative remedy" where they failed to provide inmate with grievance forms despite his repeated complaints and told him instead to address his concerns to his criminal defense attorney).

Defendants' argument that Plaintiff's concerns were "resolved" within 24 hours is difficult to dignify with analysis. Plaintiff's decision to clean despicably unsanitary conditions before a day had elapsed does not obviate the wrong suffered by being placed in (and returned to) such conditions, especially if this was done, as Plaintiff claims, in retaliation for his complaints.

Accordingly, the Court will recommend that Defendants' motion for summary judgment be denied and that summary judgment be entered for Plaintiff on the issue of exhaustion.

## V.     CONCLUSION AND ORDER

Based on the foregoing, the Court HEREBY RECOMMENDS that Defendants' motion for summary judgment (ECF No. 77) be denied and that summary judgment be entered for Plaintiff.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen** (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   April 13, 2015                    /s/ *Michael J. Seng*
                                        UNITED STATES MAGISTRATE JUDGE