1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

10  | LANARD KITCHENS,                                       Case No. 1:12-cv-00105-AWI-MJS (PC)

11  |                    Plaintiff,                          **PRETRIAL ORDER**

12  |          v.                                            **Telephonic Trial Confirmation Hearing:**
                                                            September 8, 2015, at 3:00 p.m. in Courtroom
13  | TORDSEN, et al.,                                       2 (AWI)

14  |                    Defendants.                         **Motions in Limine Filing Deadline:** October
                                                            6, 2015
15
                                                            **Opposition to Motions in Limine Filing
16                                                          Deadline:** October 20, 2015

17                                                          **Jury Trial:** October 27, 2015, at 8:30 a.m. in
                                                            Courtroom 2 (AWI)
18  | _____/

19
20      Plaintiff Lanard Kitchens ("Plaintiff"), a state prisoner proceeding *pro se* and *in forma*
21  *pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983 on January 24, 2012.  The
22  matter proceeds against Defendant Tordsen for retaliating against Plaintiff by placing him twice in
23  a feces-covered cell and refusing to give him a grievance form; and against Defendants Tordsen,
24  Coker, Leach and Day for subjecting him to unconstitutional conditions of confinement in
25  violation of the Fourteenth Amendment by placing him in the filthy cell and directing him to clean
26  it with inadequate supplies, to wit, glass cleaner and toilet paper.  (ECF Nos. 26, 28, 30, & 32.)

27      The events giving rise to Plaintiff's federal constitutional claims occurred on December
28  29-31, 2010 in the Segregated Housing Unit of the Kings County Jail in Hanford, California.  At

the time of the events, Defendant Coker was a detentions sergeant and Defendants Tordsen, Leach, and Day were detentions deputies with the Kings County Sheriff's Office. (ECF No. 38.)

**I.**          **Jurisdiction and Venue**

The Court has subject matter jurisdiction over this federal civil rights action.  28 U.S.C. § 1331.  Venue is proper because the conduct allegedly occurred in this judicial district.

**II.**          **Jury Trial**

Plaintiff and Defendants demand a trial by jury; therefore, this action shall be tried by jury. Fed. R. Civ. P. 38(b), 39(a).

**III.**          **Facts**

**A.          Undisputed Facts**

1.          Plaintiff was a pretrial detainee incarcerated at the Kings County Jail at all times material to the claims at issue.

2.          Defendants Tordsen, Day, Coker, and Leach were employed at the Kings County Jail at all times material to the claims at issue.

3.          Following the discovery of makeshift tools and a hole in the wall of Plaintiff's cell on December 29, 2010, Plaintiff was handcuffed and placed in a holding cell while the infraction was being investigated.

4.          Plaintiff was subsequently moved to cell B-86.

5.          While in B-86, Plaintiff threatened suicide and was put on suicide watch overnight.  The following day, Plaintiff was taken back to cell B-86.

6.          Shortly thereafter, Plaintiff injured himself, apparently after falling in cell B-86, and medical staff were called to the cell front to evaluate him.

**B.          Disputed Facts**

**1.          Defendants**

1.          Whether Defendant Tordsen denied Plaintiff's requests for grievance forms.

2.          Whether Plaintiff was ever placed in a cell contaminated with feces.

3.          Whether Plaintiff was directed to clean the cell.

4.      Whether Defendant Tordsen retaliated against Plaintiff by placing him in a feces-covered cell or by any other means.

6.      Whether Plaintiff suffered injuries as a result of falling in the cell, and if so, their nature and extent.

### 2.      Plaintiff[1]

1.      Whether Defendant Tordsen placed Plaintiff in cell B-86, knowing it was covered in feces, in retaliation for Plaintiff's grievance request.

2.      Whether, in responding to Plaintiff's threat of suicide, Defendants did not obey proper protocol.

3.      Whether Defendants knew Plaintiff was merely threatening suicide in order to be removed from the dirty cell.

3.      Whether Defendants gave Plaintiff the option of being placed on suicide watch or cleaning his cell.

4.      Whether Defendants intentionally returned Plaintiff to the feces-covered cell after his stay on suicide watch.

5.      Whether Defendants subjected Plaintiff to unconstitutional conditions of confinement by housing him in the feces-contaminated cell and providing him with inadequate cleaning supplies.

6.      Whether Defendants gave Plaintiff glass cleaner and toilet paper to clean the cell.

7.      Whether Plaintiff slipped in glass cleaner while cleaning the cell and hit his head.

19.      Whether Defendants were aware that Plaintiff had slipped and fallen.

20.       Whether Plaintiff has suffered permanent facial paralysis and back pain as a result of the fall.

### C.      Disputed Evidentiary Issues[2]

### 1.      Defendants

Defendants anticipate objecting to the introduction of the following:

---

[1] Much of Plaintiff's 38-page pretrial statement consists of argument, rather than a clear statement of the facts at issue. The Court has attempted to distill the facts Plaintiff claims are disputed from this argument.
[2] The parties may file motions in limine, addressed in section XVIII, and/or object to the introduction of evidence at trial.

1.      Inadmissible hearsay;

2.      Plaintiff's testimony regarding a medical diagnosis or lack thereof;

3.      Arguments on issues the Court has dismissed;

4.      Plaintiff's testimony on standards, policies, practices, and procedures of correctional or medical staff at the Kings County Jail;

5.      Plaintiff's testimony on  the content of various Kings County Jail documents;

6.      Plaintiff's testimony on issues and topics on which he refused to answer questions during his deposition;

7.      Plaintiff's testimony on alleged efforts to prevent him from bringing suit;

Defendants reserve the right to raise further objections upon the presentation of specific testimony or exhibits.

**2.      Plaintiff**

Plaintiff anticipates objecting to the introduction of the following:

1.      The crimes for which Plaintiff was incarcerated;

2.      The duration of Plaintiff's incarceration

3.      The details of the contraband found in Plaintiff's cell on December 29, 2010.

4.      Falsified documents which Defendants have previously denied to exist.

**D.      Special Factual Information**

None.

**IV.      Relief Sought**

In Plaintiff's First Amended Complaint, he requested $1.9 million in compensatory damages and $1.9 million in punitive damages against Defendants Tordsen, Coker, Leach, and Day. In his pretrial statement, Plaintiff seeks to amend his damages request to $5 million in compensatory damages and $5 million in punitive damages.[3]

Plaintiff also seeks a declaratory judgment.  However, "'[a] case or controversy exists justifying declaratory relief only when the challenged government activity is not contingent, has

---

[3] Plaintiff is not confined to the damages amount identified in his amended complaint,  Fed. R. Civ. P. 54(c); however, the Court will address Plaintiff's amended damages requests in Section XII,  Amendments. *See infra*, §, at 16.

4

not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties.'" *Pinnacle Armor, Inc. v. U.S., 648 F.3d 708, 715* (9th Cir. 2011) (quoting *Headwaters, Inc. v. Bureau of Land Management, Medford Dist.*, 893 F.2d 1012, 1015 (9th Cir. 1989). In this case, Plaintiff's claims arise from past events at a prison where he is no longer housed. Furthermore, because Plaintiff's claims for damages necessarily entail a determination whether his rights were violated, any separate request for declaratory relief was subsumed by those claims, and the request was dismissed from the action on May 31, 2013, on that ground. *Rhodes v. Robinson*, 408 F.3d 559, 565-66 n.8 (9th Cir. 2005) (quotation marks omitted). (ECF No. 32.)

Defendants seek judgment in their favor and an award of costs and attorney's fees under 42 U.S.C. § 1988.

## V.        Points of Law

### A.        Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional by persons acting under color of state law. *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir 2009); *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Under § 1983, Plaintiff must link each defendant to the participation in the violation at issue. *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77, 129 S.Ct. 1937, 1948-49 (2009); *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010); *Jones*, 297 F.3d at 934. Liability may not be imposed under a theory of *respondeat superior*; some causal connection must exist between the conduct of each defendant and the violation at issue. *Iqbal*, 556 U.S. at 676-77; *Lemire v. California Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013); *Moss v. U.S. Secret Service*, 711 F.3d 941, 967-68 (9th Cir. 2013); *Lacey v. Maricopa County*, 693 F.3d

1   896, 915-16 (9th Cir. 2012) (en banc); *Starr v. Baca*, 652 F.3d 1202, 1205-08 (9th Cir. 2011), *cert.*
2   *denied*, 132 S.Ct. 2101 (2012).

3   **B.     First Amendment Retaliation Claim**

4       In the prison context, a First Amendment retaliation claim has five elements: first, that the
5   plaintiff engaged in conduct protected by the First Amendment; second, that the defendant took
6   adverse action against the plaintiff; third, that there is a causal connection between the protected
7   conduct and the adverse action; fourth, that the adverse action either chilled the plaintiff's
8   protected conduct or "would chill or silence a person of ordinary firmness from future First
9   Amendment activities;" and fifth, that the defendant's retaliatory action did not advance legitimate
10  correctional goals. *Watison v. Carter*, 668 F.3d 1108, 1114-1115 (9th Cir. 2012); *accord Rhodes v.*
11  *Robinson*, 408 F.3d 559, 567-568 (9th Cir. 2005).

12      The first element can be satisfied by various activities. Filing a grievance, for instance, is a
13  protected action under the First Amendment.   *Watison*, 668 F.3d at 1114; *Valandingham v.*
14  *Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989). More broadly, an inmate's opinions, voiced
15  outside the context of legal or administrative proceedings, are also entitled to First Amendment
16  protection. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995)(interview with television
17  station was First Amendment activity for retaliation purposes).

18      The adverse action necessary to satisfy the second element need not be so serious as to
19  amount to a constitutional violation.  *Watison*, 668 F.3d at 1114; *Hines v. Gomez*, 108 F.3d 265,
20  269 (9th Cir. 1997). However, "insignificant retaliatory acts" are generally not actionable.  *Morris*
21  *v. Powell,* 449 F.3d 682, 685 (5th Cir. 2006); *accord Walker v. Bowersox*, 526 F.3d 1186, 1190
22  (8th Cir. 2008).

23      To satisfy the third element, the plaintiff "must allege a causal connection between the
24  adverse action and the protected conduct," *Watison*, 668 F. 3d at 1114, and demonstrate "that his
25  protected conduct was 'the substantial or motivating factor behind the defendant's conduct.'"
26  *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (citing *Sorrano's Gasco, Inc. v. Morgan*,
27  874 F.2d 1310, 1314 (9th Cir. 1989)). "[T]iming can properly be considered as circumstantial
28  evidence of retaliatory intent."  *Watison*, 668 F.3d at 1114 (citing *Pratt*, 65 F.3d at 808).

1      Fourth, the plaintiff must allege that the adverse action either chilled his First Amendment

2  exercise or would chill that of a person of ordinary firmness. *Brodheim*, 584 F.3d at 1269-1270;

3  *Rhodes*, 408 F.3d at 568-569.   Thus, plaintiff need not demonstrate that his First Amendment

4  rights were totally "inhibited or suppressed," because "it would be unjust to allow a defendant to

5  escape liability for a First Amendment violation merely because an unusually determined plaintiff

6  persist[ed] in his protected activity." *Rhodes*, 408 F.3d at 568-569 (*citing Mendocino Envtl. Ctr. v.*

7  *Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999)).  A plaintiff can establish that an action

8  would silence a person of ordinary firmness by showing that the action caused harm that was more

9  than minimal.   *Watison*, 668 F.3d at 1114; *Brodheim*, 584 F.3d 1262; *Rhodes*, 408 F.3d at 567,

10  n.11.

11      With respect to the fifth prong, a prisoner must affirmatively show that "the prison

12  authorities' retaliatory action did not advance legitimate goals of the correctional institution or was

13  not tailored narrowly enough to achieve such goals." *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir.

14  1985); *accord Watison*, 668 F.3d at 1114.

15              **C.**     **Fourteenth Amendment Conditions of Confinement Claim**

16      As a pretrial detainee, Plaintiff is protected from conditions of confinement that amount to

17  punishment. *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979); *Simmons v. Navajo Cnty.*, 609 F.3d

18  1011, 1017-18 (9th Cir. 2010); *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1244 (9th Cir.

19  2010).  Because the Eighth Amendment's prohibition against cruel and unusual punishment only

20  protects convicted prisoners, the rights of pretrial detainees are analyzed under the Due Process

21  Clause of the Fourteenth Amendment, *Bell*, 441 U.S. at 535; however, the same standards apply.

22  *Clouthier*, 591 F.3d at 1242-1243 (citing *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998)).

23      Inmates are protected from inhumane methods of punishment and from inhumane

24  conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing

25  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).   Conditions devoid of legitimate penological

26  purpose or contrary to evolving standards of decency are unconstitutional.  *Farmer*, 511 U.S. at

27  833; *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Morgan*, 465 F.3d at 1045.  However,

28  extreme deprivations are required to make out a conditions of confinement claim: only

7

1    deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to

2    form the basis of a claim. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Grenning v. Miller-Stout*,

3    739 F.3d 1235, 1238 (9th Cir. 2014).

4         A lack of sanitation, including exposure to fecal matter and the failure to provide adequate

5    cleaning supplies, can be sufficiently serious to violate the Constitution. *Johnson v. Lewis*, 217

6    F.3d 726, 731-732 (9th Cir. 2000) (lack of access to toilets and inability of prisoners to clean

7    themselves); *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996) (denial of hygiene items);

8    *Hoptowit v. Spellman*, 753 F.2d 779, 783-784 (9th Cir. 1985) (dilapidated plumbing and

9    inadequate cleaning supplies); *Hubbs v. Cnty. of San Bernardino*, 538 F.Supp.2d 1254, 1260-

10   1261, 1265 (C.D. Cal. 2008) (lack of running water and denial of hygiene items).  Courts evaluate

11   both the severity of the deprivation and the length of time it continues in determining whether the

12   deprivation is unconstitutional.  *Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995);

13   *see also Johnson*, 217 F.3d at 731 ("the more basic the need, the shorter the time it can be

14   withheld"); *Chappell v. Mandeville,* 706 F.3d 1052, 1060 (9th Cir. 2013) ("a condition of

15   confinement which does not violate the Eighth Amendment when it exists for just a few days may

16   constitute a violation when it exists for weeks or months").

17        In addition to a sufficiently serious objective harm, Plaintiff must allege facts indicating

18   that Defendants acted with a subjectively culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294,

19   303 (1991); *Johnson*, 217 F.3d at 733.   Specifically, Plaintiff must demonstrate that jail officials

20   acted with deliberate indifference, that is, that they knew of and disregarded a substantial risk of

21   serious harm to his health or safety. *E.g., Farmer*, 511 U.S. at 847; *Thomas v. Ponder*, 611 F.3d

22   1144, 1151-52 (9th Cir. 2010); *Grenning*, 739 F.3d at 1239.  Knowledge of a risk of harm may be

23   inferred where the risk is obvious, but prison officials are not liable if they respond reasonably to

24   the risk. *Grenning*, 739 F.3d at 1239 (citing *Thomas*, 611 F.3d at 1150).  Evidence that defendants

25   were motivated by legitimate penological and safety concerns will generally undercut allegations

26   that they acted with deliberate indifference.  *See Chappell*, 706 F.3d at 1062 (finding defendants

27   qualifiedly immune "given the important penological purpose" of imposing a contraband watch);

28   *Johnson*, 217 F.3d at 734 (legitimate penological purpose of quelling riot did not justify continued

denial of sanitation).

### E.    Punitive Damages

Plaintiff has the burden of proving what, if any, punitive damages should be awarded by a preponderance of the evidence. NINTH CIRCUIT MODEL CIVIL JURY INSTRUCTIONS § 5.5 (2008). The jury must find that Defendants' conduct was "motivated by evil motive or intent, or . . . involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625 (1986). Acts or omissions which are malicious, wanton, or oppressive support an award of punitive damages. *Dang v. Cross*, 422 F.3d 800, 807-08 (9th Cir. 2005).

### F.    Federal Rules of Evidence

Federal Rules of Evidence 608 and 609 provide that evidence of a witness's prior felony conviction or instance of conduct demonstrating a propensity to lie may be used to impeach that witness's testimony. Federal Rule of Evidence 404(b) provides that evidence of prior crimes, wrongs, or acts cannot be used to prove the character of the person in order to show conduct in conformity with that character trait. Such prior acts may be admissible for other purposes only, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.*

## VI.    Abandoned Issues

At the screening stage, the following claims and parties were dismissed pursuant to 28 U.S.C. § 1915A for failure to state a claim: [4]

1.    Plaintiff's First Amendment retaliation claims against Defendants Coker, Leach, and Day;

2.    Plaintiff's claims that Marryanne Tordsen and Minetta Costa violated his rights under Cal. Code Regs. tit. 15, §§ 3370(c), 3450; and the CDCR Operations Manual § 54046.8;

3.    Plaintiff's claims that Marryanne Tordsen violated Cal. Code Regs. tit. 15 §§ 3361(a), 3354.2(c)(1) and Cal. Civ. Code 56.10;

---

[4] Plaintiff's pretrial statement appears to attempt to revive some of these issues. Plaintiff describes in detail the difficulties he had obtaining his medical records and refers to Marryanne Tordsen and other medical staff as "nondefendant co-conspirators." Except insofar as these issues are relevant to his live constitutional claims, Plaintiff may not present evidence on these issues at trial. *See* Fed. R. Evid. 401.

4.      Plaintiff's claim for declaratory relief;

5.      Plaintiff's claim for injunctive relief; and

6.      Defendants Marryanne Tordsen and Minetta Costa.  (ECF Nos. 30, 32, 34 & 37.)

**VII.        Witnesses**[5]

        **The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses.  NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 281(b)(10).**

                **A.        Plaintiff's Witness List**[6]

1.      Plaintiff;

2.      Minetta Costa, Medical Program Manager, California Forensic Medical Group (CFMG); subpoena request taken under submission;

3.      Nurse Marryanne Tordsen, CFMG; subpoena request taken under submission;

4.      Nurse Shannon Irish, CFMG; subpoena request taken under submission;

5.      Nurse Frank, CFMG; subpoena request taken under submission;

6.      Nurse Ononaba, CFMG; subpoena request taken under submission;

7.      Psychiatric Nurse Linda V., CFMG; subpoena request taken under submission;

8.      Dr. Ewing, CFMG; subpoena request taken under submission;

9.      Dr. Frank Wilson, CFMG; subpoena request taken under submission.

                **B.        Defendants' Witness List**

1.      Deputy A. Alcala, Kings County Sheriff's Office;

2.      Senior Deputy Troy Bailey, Kings County Sheriff's Office;

3.      Nurse Bader, CFMG;

---

[5] Neither party is required to call all of the witnesses listed.  However, non-party witnesses the defense plans to call must be available by 8:30 a.m. on October 27, 2015.  The Court will not delay the proceedings because of witness unavailability.

[6] Plaintiff timely filed a subpoena request to secure the attendance of the listed unincarcerated witnesses. (ECF No. 90.)  The Court took the request under submission pending receipt of money orders covering the statutorily-mandated witness fees, which are due August 31, 2015. (ECF no. 92.)

4.      Nurse Bailey, CFMG;

5.      Phyllis Baker, LCSW, Central California Conditional Release Program;

6.      Deputy Wayne Brabant, Jr., Kings County Sheriff's Office;

7.      Frederico J. Banales, M.D., Atascadero State Hospital;

8.      Deputy R. Burkett, Kings County Sheriff's Office;

9.      Thomas G. Cahill, Atascadero State Hospital;

10.     Defendant Sgt. Michael Coker, Kings County Sheriff's Office;

11.     Deputy R. Collier, Kings County Sheriff's Office;

12.     Jose-William D. Convalecer, M.D., Wasco State Prison;

13.     Deputy S. Cortez, Kings County Sheriff's Office;

14.     Minetta Costa, CFMG;

15.     Defendant Deputy Travis Day, Kings County Sheriff's Office;

16.     Mark Duarte, MSW, LCSW, Central California Conditional Release Program;

17.     Investigator Randy Edmondson, Kings County District Attorney's Office;

18.     Deputy District Attorney Keith Fagundes, Kings County District Attorney's Office;

19.     David K. Fennell, M.D., Atascadero State Hospital;

20.     Dr. Ewing, M.D., CFMG;

21.     E. Frances, Nurse Practitioner, Los Angeles County State Prison

22.     Nurse Frank, CFMG;

23.     Deputy Probation Officer Natalie Gonzalez, Kings County Probation Department;

24.     Deputy E. Herriage, Kings County Sheriff's Office;

25.     Sgt. Shari Henderson, Kings County Sheriff's Office;

26.     Shannon Irish, R.N., CFMG;

27.     Deputy Probation Officer Ted Johnstone, Kings County Probation Department;

28.     Sgt. Jones, Kings County Sheriff's Office;

29.     Defendant Deputy Randy Leach, Kings County Sheriff's Office;

30.     Nurse Levan, CFMG;

1    31.    Linda (mental health nurse), CFMG;[7]

2    32.    Rosann Martin, CFMG;

3    33.    Deputy A. Narcisse, Kings County Sheriff's Office;

4    34.    Commander Kim Pedriero, Kings County Sheriff's Office;

5    35.    Veronica Quezada, M.D., Atascadero State Hospital;

6    36.    Deputy Probation Officer Kimberly Rankin, Kings County Probation Department;

7    37.    Deputy V. Rodriguez, Kings County Sheriff's Office;

8    38.    Deputy K.W. Thayer, Kings County Sheriff's Office;

9    39.    Defendant Deputy Dwayne Tordsen, Kings County Sheriff's Office;

10    40.    Marianne Tordsen, R.N., CFMG;

11    41.    Deputy Sweeney, Kings County Sheriff's Office;

12    42.    Luis H. Velosa, M.D., 1029 N. Demaree Rd., Visalia, CA 93291;

13    43.    Deputy S. Wells, Kings County Sheriff's Office;

14    44.    Weesner, R.N., CFMG;

15    45.    W. William, PsyD, Wasco State Prison;

16    46.    Dr. Frank Wilson, CFMG;

17    47.    Brandon A. Yakush, PsyD, Atascadero State Hospital;

18    48.    CFMG Staff that evaluated and treated Kitchens while at the Kings County Jail;[8]

19    49.    Custodian of Records for Hanford Police Department;

20    50.    Custodian of Records for Lemoore Police Department;

21    51.    Custodian of Records for California Highway Patrol;

22    52.    Custodian of Records for CFMG;[9]

23    53.    Custodian of Records for Atascadero State Hospital;

24    54.    Custodian of Records for CDCR;[10]

25

26    [7] It is not clear who "Nurse Linda" is.
    [8] Defendants must identify the individuals they intend to call as witnesses.  Referencing an unknown number of
    "CFMG staff" does not put Plaintiff on adequate notice of the individuals who will be testifying against him.

27    [9] It is the Court's general practice not to require the custodian of records to appear at trial if the parties are willing to
    stipulate to the authenticity of any CDCR documents from Plaintiff's central and medical files, and Defendants have
    offered to stipulate to their authenticity.  A stipulation to the authenticity of CDCR documents or medical records does

28    not preclude either side from objecting to the documents on other grounds.

55.     Custodian of Records for Kings County Jail;

56.     Custodian of Records for Kings County Probation Department;

57.     Custodian of Records for Kings County Superior Court.

**VIII.        Exhibits**

**The following is a list of documents or other exhibits that the parties expect to offer at trial.   NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."   Fed. R. Civ. P. 16(e); Local Rule 281(b)(11).**

**A.        Plaintiff's Exhibits**

A.     Medical files from CFMG, Atascadero State Hospital, and CDCR; [11]

D.     Wayne Brabant's police report (redacted), which includes a supplemental report filed by Defendant Tordsen;

E.     Commissary slip and banking slip for December 29, 2010;

F.     "Various inmate request slips"; [12]

G.     "Confirmed copies of letters to/from various government agencies"; [13]

H.     Banking slip(s) from April 6, 2012;

I.     Plaintiff's inmate file; [14]

J.     Cal. Code Regs. tit. 15, §§ 1006, 1044, 1055, 1063(a), 1073, 1082, 1083(d), 1280, 3000;

K.     Cal. Civ. Code §§ 1572, 1710;

L.     Cal. Gov't Code § 1798.24(a);

M.     Cal. Penal Code §§ 118.1, 129, 4011.2(b);

N.     Kings County Jail Policy & Procedure Manual §§ 7.01, 9.02, 9.07, 11.02;

---

[10] *See* footnote 9, *supra.*

[11] Plaintiff's reference to his entire medical file from three institutions is insufficient and does not provide the Court or Defendants appropriate notice of the documents Plaintiff plans on presenting.

[12] Plaintiff's reference to unspecified request slips is insufficient and does not provide the Court or Defendants appropriate notice of the documents Plaintiff plans on presenting.

[13] Plaintiff's reference to unspecified letters is insufficient and does not provide the Court or Defendants appropriate notice of the documents Plaintiff plans on presenting.

[14] Plaintiff's reference to his inmate file is insufficient and does not provide the Court or Defendants appropriate notice of the documents Plaintiff plans on presenting.

**B.    Defendants' Exhibits[15]**

1.      Kings County Sheriff's Department Offense Report No. 1-10-002600 (including attachments, evidence, and photographs listed in report;

2.      Kings County Sheriff's Department records regarding Kitchens;

3.      Kings County Jail documents regarding Kitchens, including release reports, booking request forms, safety cell placement logs, inmate administrative/disciplinary action reports, and detention facility incident reports;

4.      Kings County Superior Court records regarding Kitchens;

5.      Atascadero State Hospital records regarding Kitchens;

6.      Central California Conditional Release Program records report regarding Kitchens;

7.      Letter from Luis H. Velosa, M.D., to Judge James LaPorte, regarding Kitchens' psychiatric evaluation;

8.      Kings County Probation Department records regarding Kitchens;

9.      Kings County District Attorney Office Investigation Report No. 2010-123;

10.     Kings County Sheriff's Department Offense Report No. 1-10-000984 (including attachments, evidence, and photographs listed in report);

11.     Lemoore Police Department records regarding Kitchens;

12.     Hanford Police Department records regarding Kitchens;

13.     CDCR records regarding Kitchens;

14.     CFMG records regarding Kitchens;

15.     Scene photographs and diagrams.

**IX.          Discovery Documents to be Used at Trial**

1.      Defendants anticipate using the following discovery documents at trial: [16]

    a)  All interrogatories and their responses propounded by any party to this action

    b)  All requests for production and their responses propounded by any party to this action

---

[15] Many of Defendants' proposed exhibits, like Plaintiff's, refer to broad categories of information and do not provide the Court or Plaintiff appropriate notice of the documents Defendants plan on presenting.

[16] Defendants' general reference to most, if not all, discovery documents generated in this case does not provide the Court or Plaintiff appropriate notice of the documents they plan on presenting.

c)  All depositions, including attached exhibits, taken in this litigation.

2.     Plaintiff anticipates using the following discovery documents at trial:

a)  Defendant Tordsen's responses to Nos. 3, 4, 12-14 of first set of interrogatories;

b)  Defendant Coker's responses to Nos. 7, 12, 14 of first set of interrogatories;

c)  Defendant Leach's responses to Nos. 3, 4, 6 of first set of interrogatories;

d)  Defendant Leach's response to No. 7 of first set of requests for admission;

e)  Defendant Day's responses to Nos. 4, 6, 7 of first set of interrogatories;

f)  Defendant Day's response to No. 7 of first set of requests for admission;

g)  Defendants' responses to Nos. 26, 27 of second set of requests for admission;

h)  Defendants' responses to Nos. 16, 17 of second set of requests for documents.

## X.        Further Discovery or Motions

Defendants and Plaintiff anticipate filing motions *in limine*. In addition, Plaintiff seeks the production of a medical request slip from January 6, 2011 stating "no diagnosis of facial paralysis found." Plaintiff also indicates his desire to move for summary judgment, arguing that the material facts are undisputed.[17]

## XI.       Stipulations

Defendants do not list any stipulations.

Plaintiff requests Defendants to stipulate to the following:

1.  That the following four documents were included in Plaintiff's medical records obtained by subpoena:

a) the safety cell log from December 29, 2010;

b) the progress notes from December 30, 2010;

c) the progress notes from January 6, 2011; and

d) the psychiatric consult from February 18, 2011.

2.  Plaintiff states that he has tried repeatedly and unsuccessfully to get CFMG, a nonparty, to stipulate to the authenticity of his medical records. (ECF No. 93, at 15-16.)

---

[17] The dispositive motion deadline in this passed without Plaintiff having moved for summary judgment. (*See* ECF No. 40.)

1    The Court interprets this as a request that Defendants stipulate to the authenticity of

2    these records.

3    **XII.**    **Amendments/Dismissals**

4    Defendants do not list any amendments.

5    Plaintiff would like to increase his compensatory damages claim to from $1.9 million to $5

6    million in compensatory damages "to reflect the hideous disfiguring of his face, the thoracic spine

7    injury which causes him to suffer from chronic back pain, and the emotional distress that requires

8    ongoing therapy;" and his punitive damages claim from $1.9 million to $5 million "better reflect

9    the 28 violations of rules, codes, and procedures carried out by the Defendants in this matter."

10   (ECF No. 93, at 23-24.)

11   Insofar as the increase in compensatory damages relates to Defendants' alleged violation of

12   Plaintiff's right to humane conditions of confinement, the Court will grant Plaintiff's proposed

13   amended damages claim. Plaintiff's request to increase the requested punitive damages claim,

14   however, is denied.  Damages based on alleged regulatory and procedural violations do not relate

15   to Plaintiff's constitutional claims.

16   **XIII.**    **Settlement Negotiations**

17   The parties have not engaged in settlement negotiations.

18   **XIV.**    **Agreed Statement**

19   None.

20   **XV.**    **Separate Trial of Issues**

21   The punitive damages phase, if any, will be bifurcated.

22   **XVI.**    **Impartial Experts – Limitation of Experts**

23   None.

24   **XVII.**    **Attorney's Fees**

25   Defendants reserve the right to move for an award of attorney fees under 42 U.S.C. § 1988

26   and to contest any claim to attorney fees.

27   **XVIII.**    **Further Trial Preparation**

28   **A.**    **Telephonic Trial Confirmation Hearing**

16

A telephonic trial confirmation hearing set is for September 8, 2015, at 3:00 p.m. before the undersigned.

### B.   Motions In Limine Hearing and Briefing Schedule

Any party may file a motion in limine, which is a procedural mechanism to limit in advance testimony or evidence in a particular area. *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (quotation marks omitted).  In the case of a jury trial, the Court's ruling gives Plaintiff and Defendants' counsel advance notice of the scope of certain evidence so that admissibility is settled before attempted use of the evidence before the jury.  *Id.* at 1111-12 (quotation marks omitted).

Any motions in limine must be served on the other party, and filed with the Court, by October 6, 2015.  Any motion in limine must clearly identify the nature of the evidence that the moving party seeks to prohibit the other side from offering at trial.

Any opposition to a motion in limine must be served on the other party, and filed with the Court, by October 20, 2015.

If any party files a motion in limine, the Court will hear and decide such motions on October 27, 2015, the morning of trial, at 8:30 a.m.

Whether or not a party files a motion in limine, that party may still object to the introduction of evidence during the trial.

### C.   Duty of Counsel to Pre-Mark Exhibits

The parties are ordered to meet and confer no later than October 6, 2015, for purpose of pre-marking and examining each other's exhibits.  All joint exhibits must be pre-marked with numbers preceded by the designation JT (e.g., JTX-1, JTX-2).  All of Plaintiff's exhibits shall be pre-marked with numbers (e.g., PX-1, PX-2, etc.).  All of Defendants' exhibits shall be pre-marked with letters (e.g., PX-A, PX-B, etc.).

1.   Defendants' counsel shall create four (4) complete, legible sets of exhibits in binders as follows:

(a)   Two sets of binders to be delivered to Courtroom Clerk Renee Gaumnitz by October 20, 2015, one for use by the Courtroom Clerk and the other for the Court; and

17

(b)    One set for each counsel's own use.

If the parties desire, they may have a fifth set of binders to be used for the purposes of questioning witnesses.

2.    Defendants' counsel and Plaintiff shall meet and confer and make the following determination with respect to each proposed exhibit to be introduced into evidence and Defendants' counsel shall prepare separate indexes - one listing joint exhibits, and one listing each party's separate exhibits as follows:

(a)    Duplicate exhibits (i.e., documents which both sides desire to introduce into evidence) shall be marked as a joint exhibit and numbered as directed above (e.g., JTX-1).  Joint exhibits shall be listed on a separate index and shall be admitted into evidence on the motion of any party without further foundation.

(b)    Exhibits that are not jointly offered and to which there is no objection to introduction shall likewise be appropriately marked (e.g., PX-1 or DX-A) and shall be listed in the offering party's index in a column entitled "Admitted In Evidence."  Such exhibits will be admitted upon introduction and motion of the party, without further foundation.

(c)    Those exhibits to which the only objection is a lack of foundation shall be marked appropriately (e.g., PX-2 - For Identification, or DX-B - For Identification) and shall be indexed in a column entitled "Objection Foundation."

(d)    Remaining exhibits to which there are objections to admissibility not solely based on a lack of foundation shall likewise be marked appropriately (e.g., PX-3 - For Identification or DX-C - For Identification) and shall be indexed in a third column entitled "Other Objection" on the offering party's index.

3.    Each separate index shall consist of the exhibit number or letter, a brief description of the exhibit, and the three columns outlined above, as demonstrated in the example below:

INDEX OF EXHIBITS

| EXHIBIT # | DESCRIPTION | ADMITTED IN EVIDENCE | OBJECTION FOUNDATION | OTHER OBJECTION |
|---|---|---|---|---|

Two sets of the completed joint index and the separate indexes shall be delivered to the Courtroom Clerk with the two sets of binders.

The Court has no objection to counsel using copies. However, the copies must be legible. If any document offered into evidence is partially illegible, the Court may *sua sponte* exclude it from evidence.

### D.  Discovery Documents

By Tuesday, October 20, 2015, each party shall file a list of all discovery documents the party intends to use at trial. The list shall indicate whether each discovery document has previously been lodged with the Clerk. If the discovery document has not been previously lodged, the party shall so lodge the document with the Courtroom Clerk by Tuesday, October 20, 2015.

### E.  Trial Briefs

The parties are directed to file and serve their trial briefs by October 6, 2015. Local Rule 285. The parties need not include in the trial brief any issue that is adequately addressed in a motion in limine or in an opposition brief to a motion in limine. Any response to a trial brief shall be filed and served by October 20, 2015.

### F.  Voir Dire

The parties shall file and serve proposed voir dire questions, if any, by October 20, 2015.

Further, in order to aid the Court in the proper voir dire examination of the prospective jurors, counsel should lodge with the Court on the first morning of trial a list of all prospective witnesses, including rebuttal witnesses, that counsel reasonably expect to call. The purpose of the lists is to advise the prospective jurors of possible witnesses to determine if a prospective juror is familiar with any potential witness.

### G.  Agreed Summary Of The Case

The parties shall lodge with the Courtroom Clerk a joint agreed summary of the case, briefly outlining the positions of the parties, by October 20, 2015. The summary will be read to the jury panel at the outset of the trial solely for the purposes of assisting in the jury selection process. The contents of the summary shall not be deemed to be evidence or an admission or stipulation by a party as to any contested fact or issue.

1

**H.     Proposed Jury Instructions**

2        The parties shall file and serve proposed jury instructions by October 20, 2015.

3        All proposed jury instructions shall be in duplicate.   One set shall indicate the party

4   proposing the instruction, with each instruction numbered or lettered, shall cite supporting

5   authority, and shall include the customary "Given, Given as Modified, or Refused," showing the

6   Court's action with regard to each instruction.   The other set shall be an exact copy of the first set,

7   but shall be a "clean" copy that does not contain the identification of the offering party, instruction

8   number or letter, supporting authority, or reference to the Court's disposition of the proposed

9   instruction.

10       The parties are ordered to confer after the trial confirmation hearing to determine which

11  instructions they agree should be given.   As soon as possible thereafter, the parties shall submit a

12  list of joint, unopposed instructions.   As to those instructions to which the parties dispute, the

13  Court will conduct its jury instruction conference during trial at a convenient time.

14

**I.     Proposed Verdict Form**

15       The parties shall file and serve a proposed verdict form by 4:00 p.m. on October 20, 2015.

16

**J.     Use Of Videotape and Computers**

17       Any party wishing to use a videotape for any purpose during trial shall lodge a copy of the

18  videotape with the Courtroom Clerk by October 20, 2015.   If a written transcript of audible words

19  on the tape is available, the Court requests that the transcript be lodged with the Court, solely for

20  the aid of the Court.

21       If Defendants' counsel intends to use a laptop computer for presentation of evidence, he or

22  she shall contact the Courtroom Clerk at least one week prior to trial.   The Courtroom Clerk will

23  then arrange a time for counsel to bring the laptop to the courtroom, and meet with a

24  representative of the Information and Technology Department and receive a brief training session

25  on how counsel's equipment interacts with the Court's audio/visual equipment.   If Defendants'

26  counsel intends to use PowerPoint, the resolution should be set no higher than 1024 x 768 when

27  preparing the presentation.

28

**K.     Morning Conferences During Trial**

During the trial, it is the obligation of counsel to meet with the Court each morning to advise the Court and the opposing side which documents are proposed to be put into evidence that have not previously been admitted by stipulation, court order, or otherwise ruled upon.  The Court will rule on those documents, to the extent possible, prior to the commencement of trial each day out of the presence of the jury.  If the ruling depends upon the receipt of testimony, the Court will rule as requested upon the receipt of such testimony.

The Court shall consider any other legal matter at morning conferences as well.  The Court does not wish to recess the trial to hear legal argument outside of the presence of the jury, and proper preparation by counsel will eliminate the need for that result.

### L.    Order Of Witnesses

In order to make the trial operate efficiently and smoothly, counsel have the continuing obligation to advise the opposing side as to which witnesses he or she intends to call at each trial session.

## XIX.    Rules of Conduct During Trial

### A.    General Rules

1.    All participants in the trial shall conduct themselves in a civil manner.  There shall be no hostile interchanges between any of the participants.

2.    All oral presentations shall be made from the podium, unless otherwise permitted by the Court.

3.    Sidebar conferences are discouraged.  Legal arguments or discussion of issues outside the presence of the jury should be done during recesses.

4.    Counsel shall advise their respective clients and witnesses not to discuss any aspect of the case in the common areas of the courthouse accessible to the jurors, such as the lobby, the elevators, the hallways and the cafeteria.

### B.    Jury Selection

1.    The Court will conduct voir dire to be supplemented by any written questions submitted by counsel prior to trial and after the Court has concluded its questioning of the jury panel.  In some circumstances, the Court may allow brief direct questioning by counsel.

### C.     Opening Statements

1.     Counsel may use visual aids in presenting the opening statement.  However, any proposed visual aids shall be shown to opposing counsel before opening statement.

### D.     Case in Chief

1.     Counsel shall have his or her witnesses readily available to testify so that there are no delays in the presentation of evidence to the trier of fact.

2.     At the close of each trial day, counsel shall disclose his or her anticipated witnesses and order of presentation for the next day, so that any scheduling or evidentiary issues may be raised at that time.

### E.     Witnesses

1.     Before approaching a witness, counsel shall secure leave of Court to approach the witness.

2.     Before approaching a witness with awriting, counsel shall first show the writing to opposing counsel.

### F.     Exhibits

1.     All exhibits shall be marked and identified in accordance with the instructions in the pretrial order.

2.     An exhibit shall not be published to the jury until it has been admitted into evidence and counsel has secured leave of Court to publish the exhibit.

3.     The Court usually will conduct an on the record review of the exhibits that have been admitted in evidence at the conclusion of each party's case in chief and after each party has rested its entire case.

4.     Defendants will retain the exhibits pending a decision on appeal.

### G.     Objections

1.     No speaking objections or arguments are permitted in the presence of the jury.  Counsel shall state the specific legal ground(s) for the objection, and the Court will rule based upon the ground(s) stated.  The Court will permit counsel to argue the matter at the next recess.

2.     The Court will not assume that any objection made also implies with it a motion to strike an answer that has been given.  Therefore, counsel who has made an objection and who wishes to

also have an answer stricken must specifically move to strike the answer.

### H.   Closing Argument

1.      Counsel may use visual aids in presenting the closing argument.  However, any proposed visual aids shall be shown to opposing counsel before closing argument.

### XX.   Objections to Pretrial Order

Either party may file and serve written objections to any of the provisions of this order within **twenty (20) days** from the date of service of the order.  Such objections shall specify the requested modifications, corrections, additions or deletions.

### XXI.   Miscellaneous Matters

None.

\*\*\*

FAILURE TO COMPLY WITH ALL PROVISIONS OF THIS ORDER MAY BE GROUNDS FOR THE IMPOSITION OF SANCTIONS, INCLUDING POSSIBLE DISMISSAL OF THIS ACTION OR ENTRY OF DEFAULT, ON ANY AND ALL COUNSEL AS WELL AS ON ANY PARTY WHO CAUSES NON-COMPLIANCE WITH THIS ORDER.

IT IS SO ORDERED.

Dated:   August 19, 2015         _____

SENIOR  DISTRICT  JUDGE